NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHELLE G., DE'VON J., *Appellant*s,

*v.*

DEPARTMENT OF CHILD SAFETY, S.J., *Appellees*.

No. 1 CA-JV 16-0005
FILED 6-14-2016

Appeal from the Superior Court in Maricopa County
No. JD27146
The Honorable Kristin C. Hoffman, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant Mother*

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**G O U L D**, Judge:

**¶1**　　　　Michelle G. ("Mother") and De'von J. ("Father") appeal from the juvenile court's order terminating their parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　Mother and Father are the parents of S.J., who was born in March 2013. Mother also has three other young children from a prior relationship. In June 2013, Father became intoxicated and held a gun to Mother's head while S.J. and the other children were in the home; two of S.J.'s older siblings witnessed the incident. Following an additional report of neglect a few months later, DCS removed S.J. from Mother's home. DCS filed a dependency petition, and S.J. was found dependent as to both parents.

**¶3**　　　　In July 2015, DCS filed a petition to terminate Mother's parental rights on the grounds of six, nine and fifteen months' time-in-care. *See* Ariz. Rev. Stat. ("A.R.S.") sections 8-533(B)(8)(a), (b), and (c) (2014). The petition also moved to terminate Father's parental rights on the grounds of six and nine months' time-in-care. *See* A.R.S. § 8-533(a) and (b). In December 2015, the court held a contested severance hearing, and on January 8, 2016, the court issued an order terminating Mother's and Father's parental rights. Both Mother and Father timely appealed.

## DISCUSSION

**¶4**　　　　Both parents argue insufficient evidence supports the statutory grounds for severance. Mother also asserts the court erred in its best interests finding; Father does not contest this finding.

**¶5**　　　　A juvenile court's decision to terminate a parent's rights must be based on clear and convincing evidence. A.R.S. § 8–537(B) (2014); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence

supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Id.* As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Id.*

## I.   Mother

### a.  Statutory Grounds for Severance

¶6          On appeal, Mother challenges the juvenile court's termination based on fifteen months' time-in-care. *See* A.R.S. § 8-533(B)(8)(c).

¶7          Termination based on fifteen months' time-in-care requires proof that: (1) the child has been in an out-of-home placement for fifteen months; (2) DCS has made diligent efforts to provide appropriate reunification services; (3) the parent is unable to remedy the circumstances causing the placement; and (4) a substantial likelihood exists that the parent will be unable to exercise proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c).

¶8          Mother does not dispute that S.J. was in an out-of-home placement for fifteen months or that DCS made diligent efforts to provide reunification services. Rather, Mother contends insufficient evidence supports the juvenile court's finding she would be unable to safely parent S.J.

¶9          Based on evidence from counseling that Mother has a tendency to engage in abusive relationships, Mother's reunification plan focused on making her more independent, and thus less likely to rely on abusive domestic partners. As a result, DCS provided services to assist Mother in obtaining stable housing and employment. DCS gave Mother information regarding GED classes and provided transportation to those classes. However, Mother attended only two sessions before being dropped from the class for poor attendance. Mother testified that she understood the importance of obtaining a GED, but she never attempted to re-enroll in the classes.

¶10          During the dependency Mother was frequently unemployed and held eight different jobs; at the time of the hearing she had only recently started working at a fast-food restaurant. Mother also testified that she had difficulty finding her own apartment because of a prior eviction for non-payment of rent, and that she was currently living with her cousin and her cousin's three children in a three-bedroom apartment.

**¶11**         The record also shows that Mother continues to expose S.J. to her abusive relationship with Father.[1]  Mother testified that Father's violent behavior, including the incident where he held a gun to her head, made her fear for S.J.'s safety.  Nonetheless, Mother believes that S.J. would be safe with Father.  Mother also admitted to having a relationship with Father as recent as two months before the hearing.  Indeed, she remains on good terms with him, and had contact with him as recently as two days before the severance hearing.

**¶12**         Accordingly, we affirm the juvenile court's decision to terminate Mother's rights based on fifteen months' time-in-care.

### b.  Best Interests

**¶13**         Mother also contends insufficient evidence showed that severance was in the best interests of S.J.  "To prove that the termination of parental rights would be in a child's best interests, [DCS] must present credible evidence demonstrating 'how the child would benefit from a severance or be harmed by the continuation of the relationship.'" *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587, ¶ 8 (App. 2008) (quoting *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004)).  Evidence showing a child is adoptable is sufficient to satisfy a finding that the child would benefit from the termination of parental rights.  *Maricopa County Juv. Action No. JS–501904*, 180 Ariz. 348, 352 (App. 1994).  In addition, the juvenile court may also consider whether the child's existing placement is meeting the child's needs.  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

**¶14**         During the hearing, the DCS caseworker testified S.J. is adoptable.  She also testified that the maternal grandmother was meeting S.J.'s needs and was willing to adopt her.  The caseworker further stated that S.J. has been with her maternal grandmother since she was six months old, that she is with her siblings, and that she is able to maintain family relationships in that placement.  We find no error.

## II.    Father

**¶15**         Father contends insufficient evidence supported his severance based on six and nine months' time-in-care.  *See* A.R.S. § 8-

---

[1]  This has been a longstanding problem for Mother.  For example, in 2008 Mother's former boyfriend broke the arm and ribs of her child A.T. when she was an infant.  Although this led to a DCS investigation, Mother went on to have two more children with A.T.'s father.

533(B)(8)(a), (b). Although Father's parental rights were terminated on multiple grounds, if sufficient evidence supports termination on any one ground, we need not consider his arguments on any other grounds. *Michael J. v Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

**¶16** Section 8-533(B)(8)(b) provides for termination of parental rights when: (1) a child under three years of age has been in an out-of-home placement for six months; (2) DCS has made diligent efforts to provide appropriate reunification services; and (3) the parent has substantially neglected or willfully refused to remedy the circumstances causing the child to be in an out-of-home placement. In providing reunification services, DCS must provide a parent "with the time and opportunity to participate in programs designed to help [him] become an effective parent." *JS–501904,* 180 Ariz. at 353.

**¶17** Termination based on six months' time-in-care "focuses on the level of the parent's effort to cure the circumstances rather than the parent's success in actually doing so." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 20 (App. 2007). However, "[t]ermination is not limited to those who have *completely* neglected or willfully refused to remedy such circumstances." *Maricopa County Juv. Action No. JS–501568*, 177 Ariz. 571, 576 (App. 1994) (construing A.R.S. § 8–533(B)(6)(a), the predecessor to A.R.S. § 8-533(B)(8)(b)) (emphasis in original). Parents are required to "make appreciable, good faith efforts to comply with remedial programs outlined by [DCS]" to remedy the circumstances that caused the out-of-home placement. *Id.*

**¶18** Father does not challenge the juvenile court's findings that S.J. was under three years of age or that she was in an out-of-home placement for a period of six months or longer. Rather, Father asserts DCS did not prove he willfully refused or was substantially negligent in addressing the circumstances causing S.J. to be dependent; namely, incarceration,[2] substance abuse, and domestic violence.

**¶19** The record supports the juvenile court's determination. While it is true Father is no longer incarcerated, the record shows that Father substantially neglected or willfully refused to remedy his problems with alcohol and domestic violence.

---

[2] At the time the petition was filed, Father was incarcerated on an unrelated charge of misconduct involving weapons. He was released from prison in October 2014.

¶20　　　　Father has not addressed his alcohol problem. Father asserted he no longer drinks, but refused to submit to any urinalysis tests after his release from parole in April 2015. Father testified that he knew he was required to complete the tests, but chose not to because he felt it was "unnecessary," as he had already completed negative tests while on parole. Further, although Father claims he participated in alcohol treatment while in prison, he did not provide any documentation to DCS.

¶21　　　　Father's unwillingness to address his alcohol problems also impeded his ability to remedy his domestic violence issues. Mother testified that when Father drank, he often became violent and erratic. Father acknowledged that drinking makes it difficult for him to control his anger.

¶22　　　　Although Father ultimately completed counseling, he did not attend the required domestic violence, anger management, or parenting classes. Further, the record shows that Father sent harassing text messages to Mother as late as November 2015, and engaged in aggressive and intimidating behavior towards DCS employees.

¶23　　　　The juvenile court also noted concerns regarding Father's participation in his visitations with S.J. DCS closed out Father's first parent aide referral because he failed to contact the parent aide. DCS then referred Father for parent aide services a second time, but Father's first four scheduled visits were cancelled because he failed to confirm them. When Father did finally participate in a visit, it had to be terminated early due to Father's inappropriate behavior. Specifically, the parent aide reported that during this parenting session Father had bloodshot eyes and erratic behavior and had tried to intimidate her by insinuating he had a gun. As a result of this incident, the court suspended Father's visitation.

¶24　　　　Accordingly, we conclude the record supports the juvenile court's termination of Father's rights.

**CONCLUSION**

**¶25** For the reasons above, we affirm the juvenile court's termination of Mother's and Father's parental rights to S.J.



**Ruth A. Willingham · Clerk of the Court**
FILED: AA